1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                         **DISTRICT OF ARIZONA**

6    United States of America,

7                    Plaintiff,                        CR 14-1813-TUC-RM (JR)

8    vs.                                               **REPORT AND**
                                                       **RECOMMENDATION**
9    Jose Luis Plasencia, III,

10                   Defendant.

11

12

13          This matter was referred to Magistrate Judge Rateau for pretrial matters.

14   (Doc. 3).  On November 24, 2014, Defendant Plasencia filed a Motion to Suppress

15   Unconstitutional Seizure.   (Doc. 30).   The Government filed a Response on

16   December 8, 2014.  (Doc. 37).  The matter was heard by the Court on December 15,

17   2014.[1]  One witness testified for the government and three exhibits were admitted at

18   the hearing.  Additionally, as requested by defense counsel at the hearing, the Court

19   allowed Defendant to supplement his motion with excerpts of the transcripts of the

20   _____

21   [1] A transcript of the hearing is docketed as Document 43 and is referenced herein as "Tr."
     followed by the page number.  Exhibits admitted into evidence are referenced herein as
22   "Ex." followed by the exhibit number.

                                           1

1   video deposition testimony of material witnesses Mario Hernandez-Rodriquez and

2   Faustino Caro-Gonzalez.  (Doc. 42).  Having considered the matter, the Magistrate

3   Judge recommends that the Defendant's motion be granted.[2]

4   **I.      Findings of Fact**

5        Arizona Department of Public Safety ("ADPS") Officer Dustyn Patterson

6   testified on behalf of the government. Officer Patterson has served as an ADPS

7   officer for over six years.  Tr. 8.  For the past three years he has been assigned to the

8   K-9 unit and primarily patrols Interstate 10 ("I-10") west of Tucson between the

9   Avra Valley Road exit (Mile Post 242) and the Pinal Airpark Road exit (Mile Post

10   232).  Tr. 8-9.  On the evening of October 9, 2014, Officer Patterson was patrolling

11   westbound I-10 in the area around Mile Posts 233 and 234 where the posted speed

12   limit is 75 miles-per-hour and there are three lanes of travel in each direction.[3]  Tr. 9-

13   10.

14        In events that were captured by the dash camera mounted in Officer

15   Patterson's patrol car, at approximately 7:00 p.m., Officer Patterson, who was

16   traveling at approximately 60 miles per hour in the number two lane,[4] noticed an

17

18    ————————————————

[2] Trial is scheduled for March 3, 2015 and the plea deadline is February 13, 2014.  (Doc.
19   35).

20   [3] With Officer Patterson was Officer Wes Henson, a recent ADPS hire, who was interested
in joining the K-9 unit and was on a 90-day detail to ride with the department's K-9 officers.
21   Tr. 9.

22   [4] Officer Patterson identified the median lane as the "number one" lane, the center lane as
the "number two" lane, and the right lane as the "number three" lane.  Tr. 10-12.

SUV pass him in the number one lane.  Tr. 11.  The SUV initially drew Officer Patterson's attention because it appeared to him that it was traveling in tandem with the vehicle behind it.[5]  Tr. 11.   In the video, Officer Patterson states that the SUV had previously been traveling at approximately 70 miles per hour and points out that a vehicle traveling in the number two lane had passed the SUV.  Tr. 11-12; Ex. 1 (video).

Officer Patterson determined that the driver of the SUV was in violation of A.R.S. § 28-721(B), which requires vehicles traveling at less than normal speed to move to the right hand lane.  The officer pulled in behind the SUV in the number one lane and initiated a stop by activating his emergency lights.  Tr. 12-13; Ex. 1.  The SUV immediately pulled to the right hand shoulder of the interstate and stopped.  *Id*. Officer Patterson then made contact with the driver, identified as Defendant Plasencia, and after determining his licensed was suspended, issued him a warning for not moving to the right hand lane in violation of A.R.S. § 28-721 and a ticket for driving on a suspended license in violation of A.R.S. § 28-3473(A).  Tr. 13-14; Ex. 2 (Warning/Equipment Repair Order); Ex. 3 (Arizona Traffic Ticket and Complaint). Officer Patterson also requested Border Patrol assistance to determine the immigration status of Defendant's passengers.  (Doc. 1 (Complaint)).  Border Patrol determined that three of the vehicle's occupants were not in the United States legally

---

[5] The government did not argue in its Response or at the suppression hearing that tandem driving was factor considered in initiating the stop. In any case, the video does not reflect that the vehicles were traveling in a manner suggesting they were involved in joint criminal activity.

1    and Plasencia was arrested for transporting illegal aliens for financial gain in

2    violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i).  *Id.*

3        Two of Defendant's passengers, Mario Hernandez-Rodriquez and Faustino

4    Caro-Gonzalez, were detained as material witnesses.   At his deposition, Mr.

5    Hernandez-Rodriquez described the trip as "normal" and "peaceful."  (Doc. 42-1, p.

6    3).  He stated that Defendant's vehicle passed two or three other vehicles and was

7    driving "a little bit" too fast.  (*Id.*, pp. 3-4).   Mr. Caro-Gonzalez testified that

8    Defendant was driving with the flow of traffic and was neither passing nor being

9    passed by other cars.  He stated that Defendant was not blocking traffic and was

10   "going a little fast."  *Id.*, pp. 7-8.

11   **II.     Conclusions of Law**

12       Defendant moves to suppress the evidence on the ground that Officer

13   Patterson's traffic stop was unconstitutional.  The government contends that the stop

14   was justified because Defendant was traveling at "less than the normal speed of

15   traffic" at the time of the stop and was therefore required to drive in the right hand

16   lane.

17       The Fourth Amendment's prohibition against unreasonable searches and

18   seizures applies to investigatory traffic stops.  *United States v. Arvizu*, 534 U.S. 266,

19   273 (2002).  Consistent with the Fourth Amendment, police may stop persons in the

20   absence of probable cause under limited circumstances. *Terry v. Ohio*, 392 U.S. 1, 88

21   (1968).  The police may briefly stop a moving automobile to investigate a reasonable

22   suspicion that its occupants are involved in criminal activity.   *United States v.*

4

1    *Hensley*, 469 U.S. 221, 226 (1985).  Reasonable suspicion exists when an officer is

2    aware of specific articulable facts, that, together with rational inferences drawn from

3    them, reasonably warrant a suspicion that the person to be detained has committed or

4    is about to commit a crime.  *United States v. Cortez*, 449 U.S. 411, 416-18 (1981).

5         When assessing the reasonableness of the police officer's actions, the court

6    must consider the totality of the circumstances which confronted the officer at the

7    time of the stop.  *United States v. Sokolow*, 490 U.S. 1, 8 (1989).  The articulable

8    facts forming the basis of a reasonable suspicion must be measured against an

9    objective reasonableness standard, not by the subjective impressions of a particular

10   officer.  *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1445 (9th Cir. 1994).  An officer is

11   however, entitled to assess the facts in light of his specialized training and

12   experience.  *Arvizu*, 534 U.S. at 273-74.  But the inferences drawn from an officer's

13   experience must be objectively reasonable.  *United States v. Montero–Camargo*, 208

14   F.3d 1122, 1131 (9th Cir. 2000) (en banc).

15        The Court finds that under the totality of the circumstances, Officer Patterson

16   did not have reasonable suspicion to conduct a traffic stop.  Officer Patterson testified

17   that he stopped Defendant because he was impeding traffic by traveling in the

18   number one lane at slower than the normal speed and because he was passed by

19   another vehicle on the right.  An examination of the video evidence does not fully

20   corroborate the officer's testimony.

21        In the video, just prior to the initiating the stop, Officer Patterson tells his

22   passenger that the SUV had been "going about 70."  Ex. 1 at 19:00:15.  However,

5

1   from the beginning of the video until he pulls in behind Defendant's SUV, Officer

2   Patterson is traveling at speeds ranging from 75 to 78 miles per hour and only slowly

3   gains on the SUV.   At no point during the video does it appear that the SUV is

4   "going about 70."   In fact, in relation to Officer Patterson's vehicle, it appears that

5   the SUV is traveling in the range of 73 to 75 miles per hour.   Given that the speed

6   limit is 75 miles per hour on that stretch of the interstate, it is unreasonable to

7   concluded that speeds in that range do not qualify as "normal" under A.R.S. § 28-

8   721(B).   If that were the case, a driver could be stopped for driving below the

9   "normal" speed if he was traveling at 74 miles per hour, and stopped for speeding for

10  traveling at 76 miles per hour.

11       Additionally, the evidence does not support the conclusion that the SUV was

12  impeding traffic.   The video reflects that prior to the stop there was ample room for

13  vehicles to move in and out of the number two lane if they wished to do so.

14  However, none of the vehicles that the SUV was purportedly impeding in the number

15  one lane made any effort to go around him.   In fact, the sole vehicle that passed the

16  SUV was traveling only slightly faster than the SUV and was never in the number

17  one lane.   As reflected in the video, that vehicle was traveling in front of Officer

18  Patterson's vehicle in the number two lane and subsequently moved to the number

19  three lane and continued to travel at a rate of speed only slightly faster than the SUV.

20  Thus, rather than establishing that the SUV was traveling at a slower than normal

21  speed, the video reflects that it was moving with traffic at a speed close to or equal to

22  the speed limit.

6

The testimony of the Defendant's passengers is consistent with what is seen in the video. Mr. Hernandez-Rodriquez testified that the SUV was traveling a little bit too fast and had passed two or three other vehicles. Similarly, Mr. Caro-Gonzalez testified that the Defendant was "going a little fast," but was driving with the flow of traffic. Considering this testimony in combination with what is shown in the video, the facts and circumstances did not support the stop of Defendant's SUV. Defendant was traveling at approximately 73 to 75 miles per hour for the duration of the video and, according to his passengers, had not impeded traffic. However, even if he was impeding traffic at some point, his obligation to move to the right is triggered only if he is "proceeding at less than the normal speed of traffic." *See* A.R.S. § 28-721(B). While "normal speed" is not expressly defined in the statute, it certainly cannot require a driver to violate the speed limit in order to be in compliance. As such, the stop was unreasonable in light of all the relevant circumstances and the evidence against Defendant obtained from the unreasonable seizure of his vehicle must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

**III.     Recommendation for Disposition by the District Judge**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **GRANT** Defendant's Motion to Suppress Unconstitutional Seizure (Doc. 30).

1    This Report and Recommendation is not an order that is immediately

2    appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to

3    Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of

4    the District Court's judgment in the case.

5    Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from

6    the date of this Report and Recommendation to file written objections to these

7    findings and recommendations with the District Court.   Any Objections and

8    Responses to objections filed should be filed as **CR 14-1813-TUC-RM**.  No replies

9    shall be filed unless leave is granted by the District Court.

10   Dated this 30th day of December, 2014.

11

12

13

14                                    Jacqueline M. Rateau
                                      United States Magistrate Judge

15

16

17

18

19

20

21

22

8